**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spectrum Products LLC, | No. CV-21-01407-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Jie Gao, et al., | |
| Defendants. | |

Plaintiff Spectrum Products LLC ("Spectrum") owns United States Patent Number D925721, a vent extender which Spectrum sells on Amazon.com. (Doc. 18-2 ¶¶ 1-3; Doc. 1-2.) Spectrum alleges that Defendants—Jie Gao (allegedly an alias; Spectrum believes his real name might be Ji Hue) and Gao's sole proprietorship, Ventilaiders—sell an infringing product on Amazon.com. (Doc. 1 ¶ 34.) After being notified by Spectrum of the infringing nature of their product, Defendants have continued to sell the same infringing product but have attempted to conceal that infringement by changing the online description of their product's design. (Doc. 18-2 ¶¶ 5-6.) Spectrum has sent cease and desist letters to six addresses associated with the infringing product but does not presently know which address (if any) is Defendants' true address. (*Id.* ¶¶ 7-8.) Spectrum attempted to obtain this information from Defendants' attorney, but Defendants' attorney refused to divulge his clients' address or to confirm Gao's name and has since discontinued communication with Spectrum. (*Id.* ¶¶ 8-10.) In this action, Spectrum accuses Defendants of patent

infringement. (Doc. 1.) At issue is Spectrum's application for an *ex parte* temporary restraining order ("TRO") enjoining Defendants from closing or removing money from their Amazon.com accounts. (Doc. 18.)

The purpose of a TRO is to preserve the status quo pending a hearing on a preliminary injunction motion if irreparable harm will occur in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of immediate relief, that the balance of equities tips in his favor, and that a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The sliding-scale approach, however, does not relieve the movant of the burden to satisfy all four prongs for the issuance of a TRO. *Id.* at 1135. Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a [TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the [TRO] is in the public interest." *Id.* at 1135. The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Spectrum has at least raised serious questions going to the merits of its patent infringement claim. Spectrum has demonstrated that it owns the D925721 vent extender patent. Spectrum also has demonstrated that Defendants likely are knowingly selling an infringing product. Spectrum alleges in its unverified complaint that Defendants challenged the validity and enforceability of the patent by sending the Patent Examiner

prior art, and that the United States Patent Office was unpersuaded and allowed the patent to issue. (Doc. 1 ¶ 38.) But Spectrum fails to provide evidence to substantiate this allegation with its TRO application. For this reason, the Court finds under the sliding-scale approach that serious questions going to the merits of Spectrum's patent infringement claim exist, but that Spectrum has stopped short of establishing a likelihood of success on the merits. *See Visto Corp. v. Sproqit Technologies, Inc.*, 413 F.Supp.2d 1073, 1077 (N.D. Cal. 2006) ("In order to demonstrate likelihood of success on the merits, [the plaintiff] must show that in light of the presumptions and burdens that will inhere at trial on the merits, (1) it will likely prove that [the defendant] infringes the patent, and (2) [the plaintiff's] infringement claim will likely withstand [the defendant's] challenges to the validity and enforceability of the patent. On a motion for preliminary injunction, the presumption of validity under 35 U.S.C. § 2822 does not shift the burden of proof; the movant carries the burden of establishing it will likely succeed on all disputed liability issues at trial." (citations omitted)).

Where Spectrum's application fails, however, is in establishing a likelihood of irreparable harm. On this point, it is important to keep in mind the type of relief Spectrum seeks. Spectrum does not seek a TRO enjoining Defendants from continuing to sell an infringing product. For this reason, Spectrum's concerns about a "wacka-mole problem," with Defendants, after receiving notice of this lawsuit, "open[ing] new accounts and sell[ing] the infringing products in another corner of the internet," (Doc. 18 at 2) cannot support its application for a TRO because the order Spectrum seeks would not enjoin Defendants from opening a new account or selling the infringing product somewhere else online.[1] No, Spectrum seeks an asset freeze, and "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary

---

[1] Spectrum indicates that it has been in contact with Defendants' attorney and has asked Defendants' attorney to accept service on behalf of his clients. (Doc. 18 at 1.) If true, it seems likely that Defendants have already heard about this lawsuit from their attorney. Indeed, Spectrum also indicates that "Defendants are fully aware that [Spectrum] is seeking to shut down their selling and offering of the infringing products." (*Id.* at 2.) To the extent Spectrum is concerned that irreparable harm will follow if Defendants learn about this lawsuit before a TRO issues, that cat seems already to be out of the bag.

damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). This can be shown, for example, by evidence that Defendants will become insolvent or that they have "engaged in a pattern of secreting or dissipating assets to avoid judgment*.*" *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). Spectrum has not made such a showing.

Spectrum argues that "the shifty and disingenuous continual actions of the Defendant(s) and their shifty attorney" make it unlikely that Spectrum will be able to recover monetary damages in this action. (Doc. 18 at 6.) This "shifty behavior," according to Spectrum, consists of the following: "1) using a third-party attorney to obfuscate Defendant's identity, 2) refusing to accept service 3) Defendant appears to be a foreigner with little to no ties to the United States 4) mislabeling the infringing product on Amazon.com and 5) misrepresenting the infringing product to the consumer." (*Id.* at 1.) These arguments do not withstand scrutiny.

First, there is nothing suspicious about Defendants being represented by an attorney. And although Spectrum alleges that Defendants are obfuscating their identifies, Spectrum fails to substantiate this allegation. Spectrum submits an affidavit from its owner, Michael Mosiman, in which Mosiman claims that he has "a reasonable belief" that Defendants are using aliases, but he does not explain the factual basis for that belief. (Doc. 18-2 ¶ 10.) This first allegation of "shifty behavior" therefore does not establish a likelihood that Defendants' assets will be secreted away or dissipated, or that Spectrum will be unable to recover damages in this case.

Second, the fact that Defendants' attorney has refused to accept service on behalf of his clients is not suspicious. Indeed, "[t]he attorney-client relationship by itself is insufficient to convey authority to accept service." *Kruska v. Perverted Justice Foundation Inc.*, No. CV-08-0054-PHX-SMM, 2009 WL 4041941, at *2 (D. Ariz. Nov. 16, 2009). Service of process on an agent is sufficient only if the agent is "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Nothing in the present record indicates that Defendants have authorized their attorney to accept service of process,

and the mere fact that their attorney refuses to do so does not suggest that Defendants' assets will be secreted away or dissipated, or that Spectrum will be unable to recover damages in this case.

Third, the mere fact that Gao is a foreign national (the complaint alleges that Gao is a citizen of South Korea) does not show that Gao likely will dissipate or hide assets once he receives notice of this lawsuit. The Court will not presume that foreign nationals are untrustworthy. And although Spectrum argues that Gao has few ties to the United States, it does not substantiate this argument with any evidence. Notably, the complaint alleges that Gao has a temporary residence in Maryland, that Ventilaiders is based in Maryland, and that Defendants are represented by an attorney who works at Quantum Patent Law Firm, which is located in Washington, D.C. (Doc. 1 ¶¶ 3, 8, 9); *see* https://www.quantumpat.com/contact, last visited September 3, 2021. Assuming these allegations are true, it appears that Gao has some meaningful ties to the United States. More importantly, however, the fact that Gao is a South Korean citizen with only a handful of known ties to the United States does not, by itself, show that Defendants would dissipate or hide their asserts upon notice of this lawsuit.

Lastly, although Spectrum has shown that Defendants likely are mislabeling the infringing product on Amazon.com and misrepresenting the infringing product to consumers, nothing about the TRO Spectrum seeks would prevent Defendants from continuing to infringe, mislabel, or misrepresent. Moreover, although these facts suggest that Defendants might have engaged in some dishonest activity, they fall short of establishing a likelihood that Defendants' assets will be secreted away or dissipated, or that Spectrum will be unable to recover damages in this case.

Perhaps the true goal of Spectrum's TRO application comes into focus on page nine of the application. There, Spectrum argues that "[p]utting an immediate hold on Defendants' accounts is the only way to get the Defendants to stop hiding behind a lawyer and face their day in Court." (Doc. 18 at 9.) But the purpose of a TRO is to prevent an immediate and irreparable injury from occurring before the Court has time to consider and

rule on a preliminary injunction motion. A TRO is not meant to operate like bail, assuring a defendant's appearance in court by holding assets as security. Throughout its complaint and TRO application, Spectrum voices frustration with its unsuccessful efforts to serve Defendants with process in this matter, but there are other mechanisms available to discover the facts necessary to effectuate service of process. *See Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."). Courts do not, however, issue TROs for the sole purpose of strongarming potentially unwilling defendants into appearing and participating in litigation.

For these reasons,

**IT IS ORDERED** that Spectrum's application for an asset-freezing TRO (Doc. 18) is **DENIED**.

Dated this 3rd day of September, 2021.

Douglas L. Rayes
United States District Judge